Neil D. COX, Appellant,

v.

Wilma C. COX, Appellee.

No. 6970.

Court of Civil Appeals of Texas.

Texarkana.

May 23, 1957.

James E. Faulkner, Coldsprings, Kirby Kelly, Shepherd, for appellant.

Eldred Smith, Longview, for appellee.

CHADICK, Chief Justice.

This is a plea of privilege case. Wilma C. Cox, a resident of Gregg County, sued her former husband, Neil D. Cox, for $2,-001.00, alleging that he fraudulently misrepresented material facts as to the amount of community property they owned at the time of their divorce by filing a false and fraudulent inventory and appraisement. Neil D. Cox timely filed a plea of privilege in which he alleged that he was a resident of Walker County, and subject to it a special exception that the petition did not state a cause of action. The plea of privilege in due course was controverted and on a trial before the court judgment was rendered overruling the plea of privilege. The judgment of the trial court is affirmed.

Mr. Cox seeks reversal and by his first four points of error directs attention to the alleged failure of Mrs. Cox to plead or prove a cause of action, and that there is no evidence or at least insufficient evidence to support the court's judgment. His 5th point is that the controverting affidavit is not sworn to in all particulars.

It seems to be undisputed that Mr. and Mrs. Cox were divorced in Gregg County, Texas, on July 28, 1955, and that Bankers Life & Casualty Company policy No. 715340, dated December 30, 1954, on the life of Mr. Cox in the face amount of $7,-002.00, payable at death, was omitted from the inventory filed by Mr. Cox in the divorce action. The insurance policy recited that it was issued in consideration of a single premium of $3,930.00, and receipt thereof acknowledged. Endorsed on the back of the policy is this language: "Policy loan granted at issue $4,002.00. Bankers Life & Casualty Company; C. T. Hyland, Secretary."

The only witnesses at the hearing were Mr. and Mrs. Cox. Mr. Cox testified that the insurance policy was issued in accordance with a company employee incentive plan, nearly seven months before he was divorced from Mrs. Cox, and that he paid no premium and received no money from the insurance company as a loan on it and that at the time of the plea of privilege hearing the policy had expired or been terminated. He attempted to offer a letter allegedly showing the policy termination by the company, but on objection it was excluded. No complaint is made of the action of the court in this respect.

Mrs. Cox offered in evidence the policy to prove that it was issued during the time she was married to Mr. Cox and that the $3,930.00 premium was paid as recited in the policy and that the $4,002.00 loan was received by Mr. Cox and that each such item was community property. She testified that Mr. Cox' failure to list these items and the policy as community assets in the inventory damaged her and that she would not have agreed to the property settlement in the divorce case if she had known of the policy's existence.

Review of the plaintiff's pleading is necessary in a consideration of Mr. Cox' first asserted points of error; that is, that in response to his special exception the court should have abated the suit, it being fundamental that if the insurance policy has no value, the petition does not state a cause

of action. In such review the averments of the petition are taken as true. Thomas v. Texas Osage Co-op Royalty Pool, Tex. Civ.App., 248 S.W.2d 201. The plaintiff's petition alleges all the constituent elements of actionable fraud, unless the policy is worthless as appellant contends. See 20–A, Tex.Jur. p. 19, Sec. 7. The policy is attached to the petition and adopted as a part of it. Examination of its provisions shows that it has a loan value not to exceed its cash surrender value at the end of one year of $571.46 per thousand dollars of the face amount of the policy. Under this provision at the date of issue of the policy it had a loan value, in rounded figures, of $4,002. The policy provided for forfeiture on non-payment of loan interest, after notice, when the loan and interest exceeded the cash surrender value.

■ The policy by other provisions, afforded at the time of divorce, $3,000 insurance over and above the loan against it, on the life of Mr. Cox to the first anniversary date of the policy which was December 30, 1955. The annual premium rate on this policy is not shown, but only the single premium of $3,930. The $3,000 clear coverage is determined by deducting the loan of $4,002 from the face of the policy, thereby leaving actual insurance collectible in case of death the difference between the two amounts. The value of the insurance coverage afforded by this policy would be small. But it has a value as will be shown in the next paragraph and the contention that it is without value completely is not sustained.

The appellant's brief narrows the question to depend entirely on whether the policy shows on its face that it is valueless. His whole case is bottomed on the absence of value. Examination of the entire contents of the policy leads to a conclusion that though the loan cancels out a cash surrender value in the policy, yet as previously noted by its terms the policy continues to afford life insurance coverage on the life of Mr. Cox until its first anniversary date on December 30, 1955. At that time he might, if he chose, by payment of interest on the loan keep the insurance in force. The value of coverage from the date of change of beneficiary to the policy's first anniversary date belonged to the community estate because it was acquired by Mr. Cox' labor and ingenuity during marriage. Consideration of the authorities next mentioned establishes this proposition of law.

For clarity and understanding of this opinion, it is emphasized that this discussion is concerned with the community property right in life insurance coverage and is not to be confused with the right to receive the proceeds of a life insurance contract: More succinctly, this case deals with the value of life insurance coverage and not the right to receive life insurance proceeds.

■ The early Texas cases such as Martin v. McAllister, 94 Tex. 567, 63 S.W. 624, 56 L.R.A. 585; Hatch v. Hatch, 35 Tex.Civ.App. 373, 80 S.W. 411, and Whiteselle v. Northwestern Mutual Life Ins. Co., Tex.Com.App., 221 S.W. 575, though dealing with the right to receive the proceeds of insurance policies seem to and have frequently been cited as holding that insurance coverage is not property and that a wife on the occasion of a divorce has no community property interest in the value of the continuing coverage afforded by policy. The basis of these decisions was that a divorced wife had no insurable interest in her former husband and public policy forbade her receiving the fruits of the life insurance contract and that insurance was not property. This latter conclusion does not seem to be necessary to the decision reached as the cases were concerned with the right to receive the proceeds of the policy. The later case of Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307, specifically overrules Whiteselle v. Northwestern Mutual Life Ins. Co., supra, and cited an opinion of Justice Holmes of the United States Supreme

Court[1] which held that insurance is property and removed any doubt that the surrender value of a life insurance policy may be community property. The peculiar nature of the Texas community property law and the sweep of the decision is broad enough to include the value of life insurance coverage but the case does not in so many words so hold. In the case of Chapman v. Chapman, Tex. Civ.App., 172 S.W.2d 127, the Court of Civil Appeals held that the cash surrender value of insurance might be taken into consideration in a property division between parties to a divorce suit. There seems to be no sound reason why the value of life insurance coverage might not also be considered. Article 3.49–1 Vernon's Insurance Code gives a divorced wife an insurable interest in her former husband. McCain v. Yost, Tex., 284 S.W.2d 898. The basis of decision in the early cases is demolished by this latter day statutory enactment. A more cogent and compelling argument lies in the well-known fact that insurance coverage is an article of commerce which is bought and sold daily. Much of the wealth of this nation is being accumulated by corporate institutions engaged in furnishing such protection. Consideration of the present day economy of the nation[2] must be cast aside if the court should hold that life insurance coverage has no value recognizable in a property division between parties to a divorce suit. The laws of this state now regulate, control and even promulgate the rates at which such coverage may be sold.

■ Concluding that the coverage evidenced by the policy had a value which was an asset of the community estate of the parties, the further conclusion is reached that the plaintiff's petition states a cause of action. A case is pled when all the constituent elements of fraud are set out. Trinity Universal Ins. Co. v. Soliz, Tex.Civ.App., 241 S.W.2d 625. There being no attack made that the allegations of the petition were made in bad faith, to confer jurisdiction on the district court, plaintiff's points in this regard are respectfully overruled. Roper v. Brady, 80 Tex. 588, 16 S.W. 434; Dwyer v. Bassett, 63 Tex. 274, 276; 21 C.J.S. Courts § 56, Note 33, p. 67.

■ Considering next whether the judgment is supported by the evidence or is against the great overwhelming weight and preponderance of the evidence, this opinion will not be lengthened by a further recitation of facts. From those already set out it is apparent that there was evidence before the court which if believed by the judge is of probative value and sufficient to support the judgment rendered.

■ From the case law there has evolved the rule that the court of the county where the fraud is alleged to have been committed may retain for trial a case based on fraud under Subsection 7 of Article 1995, V.T. C.S., by the plaintiff pleading and proving three venue facts: (1) That the fraud did in fact occur; (2) that the fraud was committed by the defendant or one for whose act he is legally responsible; and (3) that the fraud occurred in the county of the suit. 1 McDonald Pleading & Practice, p. 354, Sec. 413, Clark's Venue in Civil Actions, p. 51, Chap. 7, par. 5, and authorities there cited. Proof of necessary venue facts under this exception differs from that necessary under most of the other exceptions to Article 1995 in that Subdivision 7 requires the plaintiff in a fraud suit to plead and prove a cause of action as one of the three venue facts which must be shown by preponderance of the evidence to overcome a plea of privilege. Smith v. Abernathy, Tex. Civ.App., 6 S.W.2d 147; 1 McDonald Civil Practice, p. 461, Sec. 455; and 43–B Tex.

1. Grigsby v. Russell, 222 U.S. 149, 32 S.Ct. 58, 56 L.Ed. 133.

2. In 1955 there were 1,060 life insurance companies in the United States, employing 398,300 persons, with a premium income of $12,546,000,000, assets of $90,-432,000,000, and insurance in force of $372,332,000,000. Source: Institute of Life Insurance, New York City, N. Y.

Jur., p. 327, Sec. 126. Appellant's points in this regard are overruled.

 Also appellant's 5th point is overruled. In the affidavit to the controverting plea Mrs. Cox swore "that the allegations, denials and facts set out in the foregoing controverting plea are true and correct." The controverting plea contained, among other things, this language: "The original petition in Cause No. 28959–B which was filed herein is referred to and made a part of this controverting plea for all purposes." This affidavit includes the allegations of her petition and is therefore sufficient. Cogdell v. Martin, Tex.Civ.App., 176 S.W.2d 982; Snyder v. Johnson, Tex.Civ.App., 237 S.W. 2d 740.

Having considered all the contentions made by the appellant and overruled the same, it follows that the judgment of the trial court will be affirmed.